UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARCELIA MONTES,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SAN JOAQUIN COMMUNITY HOSPITAL, YVONNE SANDZA, and DOES through 100,<br><br>　　　　　Defendants. | Case No.: 1:13-cv-01722 - AWI - JLT<br><br>ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION<br><br>(Doc. 6) |

San Joaquin Community Hospital ("Defendant" or "the Hospital") seeks to compel arbitration and stay this action initiated by Plaintiff Arcelia Montes ("Plaintiff"). (Doc. 6.) Plaintiff filed her opposition to the motion on January 13, 2014 (Doc. 8), to which Defendant replied on January 17, 2014 (Doc. 19). The Court heard oral arguments of counsel on January 27, 2014. For the following reasons, Defendant's motion to compel arbitration is **GRANTED**.

**I.    Relevant Factual and Procedural History**

Plaintiff alleges she was employed by the Hospital as a phlebotomist in February 2004, and Yvonne Sandza was Plaintiff's supervisor. (Doc. 1 at 2, ¶¶ 4, 7.) According to Plaintiff, "In August, September, and October 2012, [she] was entitled to leave, and actually did take a leave of absence which qualified as leave under the FMLA (29 U.S.C. 2612) and CFRA (Cal. Govt. Code 12945.2 )." (*Id.*, ¶ 8.) Plaintiff alleges that after her return from the leave of absence, Defendants began retaliating against her. (*Id.*, ¶ 9.) Specifically, Plaintiff alleges:

1

    A. Beginning on Plaintiff's first day back from leave, she was denied help with work as blood draws were behind and Plaintiff needed help. Her immediate supervisor denied help notwithstanding the fact the supervisor was made aware by two people that the phlebotomists were behind in blood draws and needed help.

    B. The second day back from leave, Plaintiff's supervisor yelled at Plaintiff about the previous day's request for help and included untruthful allegations against Plaintiff. In addition, Plaintiff's supervisor threatened to give Plaintiff a written reprimand because she took a late lunch the day before due to the fact the blood draws were behind.

    C. Shortly after returning, Plaintiff was advised that she needed to attend a mandatory insurance meeting. Plaintiff's supervisor approved and agreed that Plaintiff's lunch be moved so Plaintiff could attend the mandatory meeting. Plaintiff informed a co-worker that due to the meeting, Plaintiff missed lunch. This is related to Sandza who berated and yelled at Plaintiff over the incident, claiming Plaintiff "just wanted to do what she wants." Sandza accused Plaintiff of violating company polices and when Plaintiff asked which policies, Sandza became even more belligerent and abusive, yelling at Plaintiff and then informed Plaintiff's immediate supervisor to write Plaintiff a written reprimand.

In addition, Plaintiff alleges she was "discouraged from going to Human Resources" regarding her experiences. (Doc. 1 at 3, ¶ 9E.) On January 23, 2013, Plaintiff received a "written warning for not following the collection procedure for a platelet aggregation procedure," but she asserts that training was not provided on the collection procedure until January 30, 2013. (*Id.*, ¶ 9F.) Plaintiff alleges she was "suspended due to allegedly not "geling [sic] in and out or changing her gloves" on January 30, 2013. (*Id.*, ¶ 9G.) Defendant Sandza terminated Plaintiff's employment with the Hospital on January 31, 2013, informing Plaintiff "she could not longer be part of the San Joaquin family because [she] was not a team player." (*Id.*, ¶ 11.) According to Plaintiff, her "FMLA/CFRA leave was a substantial contributing factor in [her] termination," because "Sandza made comments… indicating she and [the Hospital] did not want employees taking leaves of absence." (*Id.*, ¶¶ 11-12.)

    Plaintiff filed a claim with California's Department of Fair Employment and Housing, and she received a right to sue letter. (Doc. 1 at 4, ¶ 13.) Accordingly, on October 25, 2013, Plaintiff initiated this action by filing a complaint against the Hospital and Sandza, asserting the following causes of action: (1) a violation of the Family and Medical Leave Act, 28 U.S.C. § 2615, by both defendants; and (2) a violation of California's Family Rights Act, Cal. Gov't Code § 12945.2, against the Hospital. (Doc. 1 at 4.) The Hospital filed the motion to compel arbitration pursuant to the Federal Arbitration Act now pending before the Court on December 12, 2013, asserting "Plaintiff signed a binding

agreement to arbitrate all discrimination and wrongful termination claims, including those based on state or federal statutes, against the Hospital and its employees, agents and representatives." (Doc. 6 at 2.) Therefore, the Hospital contends the initiation of the lawsuit constitutes a breach of Plaintiff's agreement to arbitrate her claims.

## II.     Legal Standard

The Federal Arbitration Act ("FAA") provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  A party seeking to enforce arbitration agreement may petition the Court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.

The Court's role in applying the FAA is "limited to determining whether a valid agreement to arbitrate exists and, if so, whether the agreement encompasses the dispute as issue." *Lifescan, Inc. v. Premier Diabetic Servs. Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). To determine whether an arbitration agreement encompasses particular claims, the Court looks to the plain language of the agreement, and "[i]n the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-86 (1960). Because the FAA "is phased in mandatory terms," "the standard for demonstrating arbitrability is not a high one [and] a district court has little discretion to deny an arbitration motion." *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  As a result, arbitration should only be denied when "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986).  It is well-established that "arbitration provides a forum for resolving disputes more expeditiously and with greater flexibility than litigation." *Lifescan*, 363 F.3d at 1011.

///

### III. The Arbitration Agreement and Terms

When Plaintiff began to work at the Hospital in February 2004, she received a copy of the 2002 Employee Handbook, which was in effect at that time. Plaintiff signed and dated an Acknowledgement on February 23, 2004, which indicated she had received a copy of the Employee Handbook. (Doc. 6-2 at 10.) This Acknowledgement contained a notice to Plaintiff that the Hospital's polices "may change from time to time." (*Id.*) Further, the Acknowledgement provided: "In the event that I am dissatisfied or disagree with any action or failure to act by the hospital or its agents, I agree to submit the matter to the Hospital's Grievance and Arbitration Procedures, which are contained in the Handbook, for final and binding resolution." (*Id.*)

Disputes covered by the "Grievance and Arbitration Procedure" in effect during 2004 included "the full range of employment disputes, including those based on state and federal civil rights laws, other state and federal statutes, torts, public policies, and those involving terminations." (Doc. 11 at 2.) Employees were informed they could initiate a grievance by filing a written grievance and a requested solution with an immediate supervisor within 90 days of the event giving rise to the grievance. (*Id.* at 3.) If the matter was not resolved, the employee could pursue arbitration. (*Id.* at 4.) Arbitrable disputes included grievances that:

1. Have been timely initiated and processed though the grievance portion of the Procedure. However, if the applicable statute of limitations provides a longer period of time in which to initiate a claim, the grievance will be considered timely if you initiate the Procedure within the period of time allowed by that statute of limitations;

2. Were not resolved to your satisfaction through the grievance component of the Procedure; and

3. Arose of or are related to a claim of (i) employment discrimination (including discriminatory retaliation, discriminatory or sexual harassment). (ii) termination of employment, including claims of constructive discharge, or (iii) any other claim(s) (whether brought on or behalf of one or more employees) for wages or other compensation with an actual aggregate value of $75,000 or more.

(Doc. 11 at 4.) Under the terms of the program, the employee would "pay the arbitrator an amount equal to the cost of initiating a civil action in court," and the Hospital would pay the remainder of the arbitrator's fee." (*Id.* at 5.) The arbitrator would "have the authority to award only such remedies as could be awarded by a court under the applicable substantive law, which may include injunctive or other equitable relief." (*Id.*) If an employee elected to not have legal representation at the arbitration,

the Hospital would also participate without a lawyer.  (*Id.*)  Pursuant to the terms of the program, if a party breached the arbitration agreement, "[a]n action to compel arbitration … may be brought pursuant to the procedures of the state in which the Company is located or the Federal Arbitration Act.  (*Id.* at 4.)

The Hospital amended its dispute resolution procedures several times and provided "online training courses to its employees, including safety training, training about the Employee Handbook and various other policies and procedures." (Doc. 6-1 at 8.)  In 2012, the Hospital "revised its Employee Handbook, including the Arbitration Procedure contained therein." (*Id.* at 9.)  The Hospital informed its employees of the changes to the Handbook on March 19, 2012, by sending an electronic memorandum that stated: "<u>Dispute Resolution Procedures</u>- This section regarding our grievance and arbitration procedures has been updated to make it current with recent case law." (Doc. 6-2 at 20.)  On May 29, 2012, Plaintiff signed an online acknowledgement form stating:

> I hereby acknowledge the receipt of the "Employee Handbook."  I realize that the Handbook contains many of the policies, procedures, rules and regulations ("Policies") to which I am subject.  I further acknowledge that this Handbook supersedes and replaces any inconsistent Polices and all prior handbooks. …
>
> In the event that I am dissatisfied or disagree with any action or failure to act by the Organization or its agents, I agree to submit the matter to the Organization's Grievance and Arbitration Procedures, which are contained in the Handbook, for final and binding resolution.

(Doc. 6-2 at 26.)

Pursuant to the 2012 Dispute Resolution Procedure ("the Procedure"), the Hospital retained its two methods for dispute resolution, including the informal grievance procedure and arbitration.  (Doc. 6-2 at 29.)  The Procedure covers both "current and former employees as well as applicants for employment who have signed an agreement to arbitrate." (*Id.*)  Further, the Procedure encompassed "the full range of employment disputes, including, but not limited to, those based on state and federal civil rights laws . . . , other state and federal statutes, torts, public policies, and those involving terminations." (*Id.* at 30.)  Arbitrable disputes include:

> [D]isputes that are made within the applicable statute of limitations and which arose out of, or are related to, (i) a claim of employment discrimination (including, but not limited to, discriminatory retaliation, and discriminatory or sexual harassment); (ii) a claim of wrongful or unlawful termination of employment, including claims of constructive discharge; (iii) a claim for wages or other compensation; (iv) a tort claim or any other claim in which punitive damages or emotional distress damages could be awarded that arose out of, or is related to, the employment relationship; (v) a claim that is related in any manner to the claims described in (i) through (iv) of this

paragraph.  Claims for unemployment compensation, claims under the National Labor Relations act, claims for workers' compensation benefits, and any claim that is non-arbitrable under applicable state or federal law are not arbitrable.

(Doc. 6-2 at 31.) The Hospital explained that "[t]o the extent required by applicable law, and only to this extent, the [Hospital] shall pay the costs uniquely attributable to arbitration, including the administrative fees and costs of the arbitrator." (*Id.* at 33.)  However, the Hospital and aggrieved employee would split the arbitration fees, and pay their own costs and attorney fees "unless the arbitrator rules otherwise." (*Id.*)  Again, the Procedure provided that an attorney would only represent the Hospital at arbitration if the aggrieved employee chose to be represented by counsel. (*Id.*)  The Procedure is "governed by the Federal Arbitration Act and the Arbitration Act of the state in which the [Hospital] is located." (*Id.* at 32.)

## IV.     Discussion and Analysis

As an initial matter, Plaintiff asserts that Defendant "failed in its burden to show [the] FAA [is] applicable."[1]  (Doc. 8 at 2, emphasis omitted.)  Defendant asserts the FAA applies because the Hospital is engaged in interstate commerce.  The Hospital reports that it receives federal Medicare funding, and "[t]he Hospital cares for patients who reside in states outside of California and obtains supplies, equipment and medication from outside of California." (Doc. 6-1 at 11) (citing *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 835-37 (8th Cir. 1997)).[2]  Previously, this Court has determined such activities show the general business activities of a hospital are in and affect interstate commerce. *See Bhan v. NME Hospitals*, 669 F. Supp 998, 1011 (E.D. Cal. 1987) (finding a hospital's activities were in interstate commerce where its chemicals, equipment, and supplies used to provide anesthesia were

---

[1] Plaintiff fails to demonstrate any impact on the Court's analysis if the CAA, rather than the FAA, applied. The CAA, like the FAA, favors arbitration. *Armendariz v. Found. Health Psychcare Servs., Inc*., 24 Cal. 4th 83, 98 (2000). The California Supreme Court has observed, "Two years after the FAA was enacted, this state adopted its first modern arbitration statute (Stats.1927, ch. 225), declaring arbitration agreements to be irrevocable and enforceable in terms identical to those used in section 2 of the federal act, and since that time California courts and its Legislature have '**consistently reflected a friendly policy toward the arbitration process**.' [Citation] That policy was expanded and clarified in the current arbitration statute which was adopted in 1961 (Stats.1961, ch. 461, § 2 et seq.), and it continues to be the policy of this state." *Keating v. Superior Court*, 31 Cal. 3d 584, 601-602 (1984), internal citation omitted, emphasis added.  The Court has noted further, "[U]nder California law, as under federal law, an arbitration agreement may only be invalidated for the same reasons as other contracts." *Armendariz*, at 98.

[2] Under penalty of perjury, Robert Lonto reports: "The Hospital cares for patients who reside both in and outside of California and obtains supplies, equipment, and medication from both inside and outside of California. The Hospital also receives federal Medicare funding." (Doc. 6-2 at 2, Lontz Decl. ¶ 3.)  Although Plaintiff contends it is "dubious at best" that such a fact is within the personal knowledge of Mr. Londo, she presents no evidence to refute the fact that the Hospital is engaged in interstate activity.

6

purchased and shipped in interstate commerce; the costs for anesthesia was paid for in large part by Medicare; and the hospitals were out-of-state corporations).[3]  Therefore, the Hospital has carried its burden to demonstrate its activities are within interstate commerce, and the FAA is applicable.

On the other hand, the arbitration portion of the handbook specifically indicates the arbitration could be brought under either the FAA or under the CAA.  The 2002 handbook read, "An action to compel arbitration pursuant to this Procedure, or to confirm, vacate or modify an arbitration award, may be brought pursuant to the procedures of the state in which the Company is located or the Federal Arbitration Act.  (Doc. 11 at 4)  The 2012 version contains a similar provision.  It reads, "This Agreement may be enforced and administered by a court of competent jurisdiction through the filing of a petition to compel arbitration; confirm, vacate or modify an arbitration award; or otherwise pursuant to the Federal Arbitration Act, the arbitration laws of the state in which the Organization is located or a combination of the two."  (Doc. 6-2 at 32)  In essence, either version allows the moving party to choose to proceed under either the FAA or the CAA.  Given the agreement contains this choice-of-law provision, the Court will honor it.  *See Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal.App.4th 1425, 1445 (2012); *Valencia v. Smyth*, 185 Cal.App.4th 153, 162-163 (2010).

### A.   Validity of the arbitration agreement

When determining whether a valid and enforceable agreement to arbitrate has been established for the purposes of the FAA, the Court should apply "ordinary state-law principles that govern the formation of contracts to decide whether the parties agreed to arbitrate a certain matter." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Circuit City Stores v. Adams*, 279 F.3d 889, 892 (2002).  Here, the parties agree the law of the state of California governs the determination of whether the agreement is valid.  (Doc. 6-1 at 15; Doc. 8 at 3.)

Pursuant to California contract law, the elements for a viable contract are "(1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration." *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999) (citing Cal. Civ. Code § 1550;

---

[3] The FAA applies to "a contract evidencing a transaction involving commerce . . ." 9 U.S.C. § 2.  The FAA does not apply to employment contracts of "seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce. " 9 U.S.C. § 1.  However, this exclusion applies only to transportation workers (*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001)) and other employment contracts are not excluded.

7

*Marshall & Co. v. Weisel*, 242 Cal. App.2d 191, 196 (1966)). The Supreme Court explained, an agreement to arbitrate may be "invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011).

Under California law, an arbitration agreement may only be invalidated for the same reasons as other contracts. Cal. Code Civ. Proc. § 1281. For example, a contract "is unenforceable if it is both procedurally and substantively unconscionable." *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007)). Procedural unconscionability focuses on "oppression and surprise," while substantive unconscionability focuses upon "overly harsh or one-sided results." *Stirlen v. Supercuts, Inc.*, 51 Cal. App.4th 1519, 1532 (1997) (citations omitted). Both forms of unconscionability must be present in order for a court to find a contract unenforceable, but it is not necessary that they be present in the same degree. *Davis*, 485 F.3d at 1072; *Stirlen*, 51 Cal. App. 4th at 1532. Consequently, "[c]ourts apply a sliding scale: 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.'" *Id.* (quoting *Armendariz v. Found. Health Psychcare Servs.*, *Inc.*, 24 Cal.4th 83, 99 (2000)).

Defendant contends the arbitration agreement is valid California contract law. (Doc. 6-1 at 15.) The Hospital observes that the California Supreme Court determined an arbitration agreement is valid if it meets certain requirements, including: "(1) it may not limit statutorily-imposed remedies; (2) it must provide for adequate discovery; (3) it must provide for a written arbitration award; (4) the employee may not be forced to pay unreasonable costs and arbitration fees; and (5) it must provide a 'modicum of bilaterality." (*Id.*) (citing *Armendariz v. Found. Health Psychcare Servs.*, *Inc.*, 24 Cal.4th 83, 114 (2000)). Because the terms of the arbitration agreement comply with *Armendariz,* the Hospital argues the Procedure is enforceable. On the other hand, Plaintiff asserts the arbitration agreement is invalid because it is procedurally and substantively unconscionable. (Doc. 8 at 3-10.)

Under California law, Plaintiff bears the burden of establishing the arbitration agreement is unconscionable by a preponderance of the evidence. *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 972 (1997) (the party seeking to compel arbitration "bears the burden of proving the existence

of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition [to compel arbitration] bears the burden of proving by a preponderance of the evidence any fact necessary to its defense"). A party asserting unconscionability must demonstrate both procedural and substantive unconscionability at the time the contract was made. *Am. Software, Inc. v. Ali*, 46 Cal. App. 4th 1386, 1390 (1996). Thus, Plaintiff argues the Court must look to the terms set forth in the Employee Handbook Plaintiff received in 2004 to evaluate whether the arbitration provision was unconscionable. (Doc. 8 at 5.) However, Defendant has presented evidence that Plaintiff received notice of revisions in 2012 and electronically completed an Acknowledgement Form through which she agreed "to submit [a dispute] to the Organization's Grievance and Arbitration Procedures, which are contained in the Handbook, for final and binding resolution." (Lonto Decl. ¶¶ 16, 18 and 21; Doc. 6-2 at 22 and 26.)

Although Plaintiff asserts she does not recall receiving email notification regarding any revisions or electronically signing the Acknowledgement Form (Montes Decl. ¶ 3), this is insufficient to rebut Defendant's evidence. *See Perez v. Maid Brigade, Inc.,* 2007 U.S. Dist. LEXIS 78412, 2007 WL 2990368 (N.D. Cal., Oct. 11, 2007) (finding that a plaintiff had not met her burden to prove that she did not sign the agreement including arbitration agreement because she stated simply that she "did not recall signing these documents")*; Murphy v. DirecTV,* 2011 U.S. Dist. LEXIS 87625, 2011 WL 3319574 at *1 (C.D. Cal., Aug. 2, 2011) (finding the defendants' proof of mailing sufficient to defeat the plaintiffs' claims of never having seen, "let alone signed, the Customer Agreement that contain[ed] the Arbitration Provision"). Here, Robert Lonto, the Executive Director of Human Resources of San Joaquin Community Hospital reports he "reviewed the personnel file and the records pertaining to Plaintiff that are maintained by the Hospital." (Doc. 6-2 at 2, Lonto Decl. ¶ 5.) In addition, Mr. Lonto reviewed "Plaintiff's Transcript Report from Healthstream, the Hospital's online training provider" which demonstrated Plaintiff completed training related to the 2012 handbook which contained the arbitration agreement. (*Id.* at 4, ¶ 14.) In addition, Mr. Lonto provided copies of the online "Acknowledgment of Reading Handbook" form required to be completed by Plaintiff on May 29, 2012 when she completed training on the amended employee handbook. (*Id.* at 4, ¶¶ 14-15.) In this

acknowledgment, which Lonto attests Plaintiff signed[4], she agreed to arbitrate her claims. (*Id.* at 4-5, ¶¶ 18, 20-21.)

Plaintiff argues that no matter the enforceability of the 2012 agreement—and no matter whether it was an amendment to the 2002 handbook or a new agreement entirely—the unconscionable nature of the arbitration requirement should be evaluated as to the terms set forth in the 2002 agreement. Toward this, Plaintiff relies upon *American Software, Inc. v. Ali*, 46 Cal.App.4th 1386 (1996). In *American Software*, the plaintiff entered into an employment agreement which indicated that sales commissions were paid at the time payment was received from the buyer and, in the event of voluntary separation from the company, the employee agreed to forfeit any commissions not due within 30 days after the termination. *Id*. at 1391-1395. However, over the years, events occurred which made payment of the commissions within 30 days of her departure from the company not occur. *Id*. at 1392. Plaintiff argued that the unconscionability of the contract should be evaluated in light of these later events. *Id*. In rejecting this position, the court held, "The critical juncture for determining whether a contract is unconscionable is the moment when it is entered into by both parties-not whether it is unconscionable in light of subsequent events." *Id*. at 1391.

The facts at hand are wildly different. First, here, there is evidence of Plaintiff's affirmative intent to be bound by the 2012 handbook and, therefore, the arbitration agreement. (Doc. 6-2 at 4, Lonto Decl. ¶¶ 14-15.) In *American Software*, there was no second agreement and no modification to the only agreement and no argument that a different agreement should control. Second, here there is no assertion that a course of conduct should be considered when evaluating whether the contract was unconscionable. Instead, the argument is only whether the 2002 or the 2012 agreement controls. Basic contract law indicates that the agreement in force at the time the claim accrued should control and *American Software* does not state a different holding.

Because Defendant has established by a preponderance of the evidence that Plaintiff agreed to

---

[4] In essence Defendant asserts that for Plaintiff to complete the training and to have received the completion certificate which she received, she had to have signed the acknowledgment. Plaintiff does not counter this other than to say she doesn't recall doing this and thinks she would have remembered. However, this is a far cry from her affirmatively questioning the accuracy of the Hospital's records or asserting she did not receive the handbook, did not receive the training or did not sign the acknowledgement.

the terms of the 2012 Employee Handbook and its arbitration procedure, the Court examines whether the terms of the this arbitration procedure are unconscionable.

### 1. Procedural Unconscionability

The threshold issue for procedural unconscionability "is whether the subject arbitration clause is part of a contract of adhesion." *Stirlen*, 51 Cal. App. 4th at 1532; *see also Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1042 (9th Cir. 2001). A contract of adhesion "is a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 817 (1981). Accordingly, the Court must examine "the manner in which the contract was negotiated and the circumstances of the parties at that time." *Kinney v. United Healthcare Services*, 70 Cal. App. 4th 1322, 1327 (1999). Specifically, the Court questions whether the contract was "imposed on employees as a condition of employment." *Soltani*, 258 F.3d at 1042.

In general, under California law, it is "procedurally unconscionable to require employees, as a condition of employment, to waive their right to seek redress of grievance in a judicial forum." *Ingle v. Circuit City Stores*, 328 F.3d 1165, 1170 (9th Cir. 2003); *see also, e.g., Armendariz*, 24 Cal. 4th at 113 (an arbitration agreement was procedurally unconscionable because it was imposed on employees as a condition of employment, and there was no opportunity for negotiation); *Aral v. Earthlink, Inc.*, 134 Cal. App. 4th 544, 557 (2005) (an arbitration clause on a "take it or leave it" basis demonstrates "quintessential procedural unconscionability"); *Martinez v. Master Protection Corp.*, 118 Cal.App.4th 107 (2004) (finding an arbitration agreement procedurally unconscionable because it was a prerequisite of employment and the employee did not have an "opportunity to negotiate or refuse to sign the arbitration agreement"); *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (Ct. App. 2001) ("A finding of a contract of adhesion is essentially a finding of procedural unconscionability").

When Plaintiff signed the Acknowledgment, she agreed "to submit [any grievance] to the Organization's Grievance and Arbitration Procedures, which are contained in the Handbook, for final and binding resolution." (Doc. 6-2 at 26.) Because the Acknowledgment Form was separate from the Employee Handbook, there was no surprise to Plaintiff regarding the existence of the arbitration procedure. Further, the arbitration agreement was not concealed among other contractual terms, and its

11

terms were conveyed clearly to Plaintiff.

On the other hand, Plaintiff was not given an opportunity to negotiate the terms of the arbitration agreement. The Hospital was in a stronger bargaining position than Plaintiff by requiring its employees to accept the arbitration agreement as a condition of employment or continued employment. *See Armendariz*, 24 Cal.4th at 115 (explaining with arbitration agreements, "the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration agreement"). Thus, the agreement was offered on a "take it or leave it" basis[5], which demonstrates that it contains some measure of procedural unconscionability. *See Aral*, 134 Cal. App. 4th at 557; *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir.2010) ("California law treats contracts of adhesion, or at least terms over which a party of lesser bargaining power had no opportunity to negotiate, as procedurally unconscionable to at least some degree"); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir.2003) (It is "procedurally unconscionable to require employees, as a condition of employment, to waive their right to seek redress of grievance in a judicial forum") However, because both procedural and substantive unconscionability must be present to determine whether an arbitration agreement will be enforced, this conclusion is not dispositive.

### 2. Substantive Unconscionability

"Substantive unconscionability addresses the fairness of the term in dispute." *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100 (Ct. App. 2002). While "parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope," substantive unconscionability "limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting the forum for itself." *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003) (quoting *Armendariz*, 24 Cal. 4th at 118). Thus, the focus of the Court's inquiry is whether an agreement is one-sided and will have an overly harsh effect on the party not given an opportunity to

---

[5] The Court acknowledges that *Concepcion v. AT&T Mobility*, ---U.S.---, 131 S.Ct. 1740, 1750 (2011) may give rise to an argument that the adhesive nature of a "take-it-or-leave-it contact," may no longer be sufficient to give rise to a finding of procedural unconscionability. However, *Concepcion* was not evaluating procedural unconscionability and involved a consumer contract which provides even less of an ability to negotiate than here.

negotiate its terms. *Flores*, 93 Cal. App. 4th at 854. The Ninth Circuit instructs courts applying California law to arbitration agreements "look beyond facial neutrality and examine the actual effects of the challenged provision." *Ting*, 319 F.3d at 1149; *see, e.g., Ingle*, 328 F.3d at 1180 (finding an arbitration agreement substantively unconscionable upon review of the agreement's provisions, including claims subject to arbitration, its statute of limitations, class actions, fee and cost-splitting arrangements, remedies available, and termination/modification of the agreement).

### a. Claims subject to arbitration

An arbitration agreement that "compels arbitration of the claims employees are most likely to bring against [the employer] but exempts from arbitration the claims [the employer] is most likely to bring against its employees" is substantively unconscionable. *Ferguson v. Countrywide Credit Indus.*, 298 F.3d 778, 785 (2002) (quoting *Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 175-76 (Ct. App. 2002). For example, in *Ferguson* and *Mercuro*,[6] the courts found Countrywide's arbitration agreement was substantively unconscionable, because it excluded claims "for intellectual property violations, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information." *Ferguson*, 298 F.3d at 785; *Mercuro*, 96 Cal. App. 4th at 176.

Here, Plaintiff asserts the claims subject to arbitration are substantively unconscionable due to a lack of mutuality in the claims to be arbitrated. (Doc. 8 at 5.) The Hospital's Dispute Resolution Procedures indicate the policies "cover[] the full range of employment disputes." (Doc. 6-2 at 30.) Specifically, pursuant to the terms of the Procedure,

> Arbitrable disputes by an employee are those disputes that are made within the applicable statute of limitations and which arose out of, or are related to, (i) a claim of employment discrimination (including, but not limited to, discriminatory retaliation, and discriminatory or sexual harassment); (ii) a claim of wrongful or unlawful termination of employment, including claims of constructive discharge; (iii) a claim for wages or other compensation; (iv) a tort claim or any other claim in which punitive damages or emotional distress damages could be awarded that arose out of, or is related to, the employment relationship; (v) a claim that is related in any manner to the claims described in (i) through (iv) of this paragraph.

(Doc. 6-2 at 31.) However, "[c]laims for unemployment compensation, claims under the National labor

---

[6] Both cases involved the arbitration agreement of Countrywide Credit Industries. *See Ferguson*, 298 at 784 ("During oral argument, counsel for Countrywide conceded that the provisions of the arbitration agreement in the present case are the same as the provisions of the arbitration agreement at issue in *Mercuro*").

Relations Act, claims for workers' compensation benefits, and any claim that is non-arbitrable under applicable state or federal law are not arbitrable." (*Id.*) Further, arbitrable disputes by the Hospital include "claims against an employee that are made within the applicable statute of limitations and which arose out of, or are related to, the employment relationship."[7] (*Id.*)

Significantly, the claims subject to arbitration include claims by employees *or* the Hospital and include any action arising out of the employment relationship. For example, claims against an employee for indemnification arising from malpractice or sexual harassment of a coworker, could be arbitrated by the Hospital. Claims for recovery of value of items stolen or damaged by the employee, for example, could be another arbitration claim brought by the Hospital. Indeed, the only claims which are severed from the arbitration agreement are severed as to both the employee and the Hospital.

Thus, the Court does not conclude that Defendant has reserved in itself the ability to seek judicial intervention as to claims brought by it against the employee while requiring the employee to arbitrate claims he/she could bring against it. Accordingly, the claims subject to arbitration do not appear unconscionable. *See Ferguson*, 298 F.3d at 784, n.6 (explaining substantive unconscionability may be demonstrated when an employer seeks to enforce "what is essentially a unilateral arbitration agreement" because the company excludes claims it may bring against the employee from the agreement).

### b. Fees and cost arrangement

When arbitration is a condition of employment, an employer "cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear . . . in court."

---

[7] The 2002 version required arbitration of any claims which had been exhausted in the grievance procedure and which arose out of "(i) employment discrimination (including discriminatory retaliation, discriminatory or sexual harassment), (ii) termination of employment, including claims of constructive discharge, or (iii) any other claim(s) (whether brought by or on behalf of one or more employees) for wages or other compensation with an actual aggregate value of $75,000 or more." (Doc. 11 at 4) Further the agreement states, "In the event the Company desires to assert a claim against an employee, the claims shall be submitted to final and binding arbitration." *Id.* Though Plaintiff argues this means that the Hospital is not required to arbitrate any claim—given the grievance procedure is for the employee only—this is an unreasonable interpretation. Instead, the Court finds the more reasonable interpretation is that *only* the disputes set forth under paragraphs 1-3 of the 2002 agreement must be arbitrated by either the employee or the Hospital. This interpretation is supported by the surrounding language of the 2002 agreement. In regard to claims to be arbitrated brought by the Hospital, the agreement reads, "These claims need not first be processed through the grievance portion of the Procedure." (Doc. 11 at 4)

*Armendariz*, 24 Cal. 4th at 110 (emphasis in original). A scheme that makes each party bear half the costs of the arbitration "alone would render an arbitration agreement unenforceable." *Circuit City v. Adams*, 279 F.3d 889, 894 (9th Cir. 2002). For example, the Ninth Circuit found a cost-splitting provision substantively unconscionable when the agreement forced the plaintiffs to pay the filing fee up to a maximum of $125.00 and share costs equally after the first day of arbitration. *Ferguson*, 298 F.3d at 781*; see also Ingle*, 328 F.3d at 1177-78 (finding an arbitration provision substantively unconscionable that stated "each party shall pay one-half of the costs of arbitration following the issuance of the arbitration award").

In this case, the arbitration agreement provides: "To the extent required by applicable law, … the [Hospital] shall pay all costs uniquely attributable to arbitration, including the administrative fees and costs of the arbitrator. Otherwise, the Organization and the employee shall split the arbitration fees." (Doc. 6-2 at 33.) Further, although the parties must bear their own attorney's fees by default if represented at the arbitration, the arbitrator is authorized to rule otherwise, such as when "the applicable law affords the prevailing party's attorney fees and costs." (*Id.*) Here, Plaintiff does not contend that the costs of the arbitration raise any substantive unconscionability and the Court is unaware of any. Indeed, the provisions governing the arbitration fee and costs do not require employees to incur any type of costs they would otherwise avoid in court. Thus, the arrangement is not substantively unconscionable.

       c.  Statute of limitations

When evaluating a statute of limitations set forth in arbitration agreement, "[t]he critical question is whether 'the period fixed is so unreasonable so as to show imposition or undue advantage in some way.'" *Jackson v. S.A.W. Entm't Ltd.*, 629 F. Supp. 2d 1018, 1028 (N.D. Cal. 2009) (quoting *Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1430 (2003). Generally, provisions strictly requiring employees to bring all claims within one year are unconscionable. *Adams*, 279 F.3d at 894-95.

Here, the Hospital's arbitration procedure requires claims be brought "within the applicable statute of limitations," whether the claim is initiated by an employee or the employer. (Doc. 6-2 at 31.) The Procedure does not impose a shortened statute of limitations upon the parties, and there is no imposition or undue advantage. Consequently, the statute of limitations provision is not substantively

1 unconscionable.

#### d. Remedies

Remedy provisions that "fail[] to provide for all the types of relief that would otherwise be available in court" by limiting an employee's total damages and punitive damages are substantively unconscionable. *Adams*, 279 F.3d at 895 (citing *Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465, 1482 (9th Cir. 1997)). The arbitration procedure grants the arbitrator "the authority to award only such damages as could be awarded by a court under the applicable substantive law which may include injunctive or other equitable relief." (Doc. 6-2 at 33). Because the relief provided does not improperly limit remedies available to the parties, the provision is not substantively unconscionable.

#### e. Unilateral amendment

When provisions of an arbitration agreement permit an employer to unilaterally amend or terminate the agreement, even with written notice to employees, the provision is presumed to be substantively unconscionable. *See, e.g., Ingle*, 328 F.3d at 1179; *Ramirez-Baker v. Beazer Homes, Inc.*, 636 F. Supp. 2d 1008, 1021-22 (E.D. Cal. 2008). Here, the Acknowledgment Form signed by Plaintiff reserved in the Hospital the right to change the handbook and, hence, its arbitration procedure which was set forth therein. This right was not limited in any fashion and, therefore, failed to preclude the Hospital making an amendment which would impact accrued claims. Indeed, the right to amend the handbook does not require notice of the change whether in advance or after. Conversely, employees are given no concomitant right to object, to make changes themselves or to opt-out. *See Ingle*, 328 F.3d at 1179.

The adhesive nature of such amendments was *Ingle's* concern when it held, "By granting itself the sole authority to amend or terminate the arbitration agreement, Circuit City proscribes an employee's ability to consider and negotiate the terms of her contract. Compounded by the fact that this contract is adhesive in the first instance, this provision embeds its adhesiveness by allowing only Circuit City to modify or terminate the terms of the agreement." *Id*.

The Court recognizes that California courts have held that a right to make unilateral amendments to an arbitration agreement does not equate to a finding of substantive unconscionability based upon an imputation of the covenant of good faith and fair dealing. *24 Hour Fitness, Inc. v.*

*Superior Court*, 66 Cal.App.4th 1199 (1998); *Peleg v. Neiman Marcus Group, Inc.*, 204 Cal.App.4th 1425, 140 (2012); *Serpa v. California Surety Investigations*, 215 Cal.App.4th 695, 708 (2013). On the other hand, *Asmus v. Pac. Bell*, 23 Cal.4th 1, 15 (2000), the California Supreme Court evaluated an employer's right to modify a term of employment related to employment security. In *Asmus*, the employer agreed that it would offer to management level employees retraining or reassignment to other jobs as long as the employee continued "to meet our changing business expectations" if the specific employee's job was eliminated. Id. at 7. The policy indicated it would be maintained until there was a change that materially affected the employer's "business plan achievement." Id. Six years later, the employer deleted the job security policy. Id.

The California Supreme Court considered the employees' argument that the fact that the employer had the right to unilaterally terminate the policy made the contract illusory. *Asmus*, at 15. In rejecting this argument, the Court held,

> Scholars define illusory contracts by what they are not. As Corbin observes, 'if a promise is expressly made conditional on something that the parties know cannot occur, no real promise has been made. Similarly, one who states 'I promise to render a future performance, if I want to when the time arrives,' has made no promise at all. It has been thought, also, that promissory words are illusory if they are conditional on some fact or event that is wholly under the promisor's control and bringing it about is left wholly to the promisor's own will and discretion. This is not true, however, if the words used do not leave an unlimited option to the one using them. It is true only if the words used do not in fact purport to limit future action in any way.' (2 Corbin on Contracts, supra, § 5.32, pp. 175–176, fns. omitted.) Thus, an unqualified right to modify or terminate the contract is not enforceable. But the fact that one party reserves the implied power to terminate or modify a unilateral contract is not fatal to its enforcement, if the exercise of the power is subject to limitations, such as fairness and reasonable notice. (See id., p. 177; 1 Witkin, Summary of Cal. Law, supra, Contracts, § 233, p. 241.)
>
> As Pacific Bell observes, the MESP was not illusory because plaintiffs obtained the benefits of the policy while it was operable. In other words, Pacific Bell was obligated to follow it as long as the MESP remained in effect. Although a permanent no-layoff policy would be highly prized in the modern workforce, it does not follow that anything less is without significant value to the employee or is an illusory promise. (See *Bankey, supra*, 443 N.W.2d at pp. 119–120.) As long as the MESP remained in force, Pacific Bell could not treat the contract as illusory by refusing to adhere to its terms; the promise was not optional with the employer and was fully enforceable until terminated or modified. (2 Corbin on Contracts, supra, § 5.32, p. 177.)

*Id*. at 15-16.

Here, the language of the right to modify the policies, including the arbitration agreement, fails to put any limits on how or why this would occur. (Doc. 6-2 at 26) Thus, the Court declines to imply

17

limitations of this authority via the covenant of good faith and fair dealing in light of the fact that this appears inconsistent with *Asmus*. Thus, the Court concludes that under California law, the right of unilateral amendment by the Hospital is substantively unconscionable.

### f. Discovery

The Procedure explains that "[a]rbitration is intended to provide a less time-consuming, less expensive, and less complicated means of settling employment-related disputes." (Doc. 6-2 at 33.) Pursuant to the Hospital's dispute resolution procedure:

> Discovery may be initiated by the parties after the selection of the arbitrator and may be initiated without first obtaining permission from the arbitrator. In the event of a dispute regarding discovery either party may ask the arbitrator to determine what discovery is appropriate under the circumstances or adequate for the prosecution or defense of the claims. However, under no circumstances will discovery be permitted that is broader than that which is allowed by the applicable procedural rules of the state in which the Organization is located. The arbitrator may issue subpoenas to compel the testimony of third-party witnesses or the production of documents.

(*Id.*) Plaintiff appears to assert this discovery procedure is substantively unconscionable. (Doc. 8 at 9.)

As Plaintiff notes, "In *Armendariz*, the California Supreme Court held that employees must be 'at least entitled to discovery sufficient to adequately arbitrate their statutory claims, including access to essential documents and witnesses.'" (Doc. 8 at 9, quoting *Armendariz*, 24 Cal.4th at 106.) Notably, in *Armendariz* the court observed that parties are "permitted to agree to something *less than* the full panoply of discovery provided in Code of Civil Procedure section 1283.05." *Id.*, 24 Cal.4th at 106. Under the terms of the Procedure—either in the 2002 or the 2012 version—disputes regarding the appropriateness of the discovery are to be submitted to the arbitrator—just as they are in court—and that the amount of discovery cannot be broader than that allowed under California law. Despite Plaintiff's concern, there is no reason to believe the arbitrator will act unreasonably or unlawfully related to her discovery efforts. Therefore, the discovery provision of the arbitration agreement is not substantively unconscionable.

### g. Agreement as a whole

California law provides: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so

limit the application of any unconscionable clause as to avoid any unconscionable result." Cal. Civ. Code §1670.5(a). Refusing to enforce an arbitration agreement is appropriate "only when an agreement is permeated by unconscionability." *Armendariz*, 24 Cal. 4th 83 at 122 (internal quotation marks omitted). Courts often look to whether the offending provisions "indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." *Id.* at 124; *see also Ferguson*, 298 F.3d at 787-88. For example, the Ninth Circuit found an arbitration agreement was "permeated by unconscionable clauses" where there was a "lack of mutuality regarding the type of claims that must be arbitrated, the fee provision, and the discovery provision." *Ferguson*, 298 F.3d at 788.

In this agreement, the only term of the Procedure appearing substantively unconscionable is the reservation of the right to amend the arbitration agreement unilaterally. However, this is not a provision found within the arbitration agreement itself, and may be considered as severed from the agreement. *See, e.g., Grabowski v. C.H. Robinson Co.*, 817 F. Supp. 2d 1159 (S.D. Cal. 2011) (finding three substantively unconscionable provisions could be severed from an arbitration agreement which was not "permeated by unconscionability," thus rendering the agreement enforceable); *Stacy v. Brinker Rest. Corp.*, 2012 U.S. Dist. LEXIS 150345, at * 31-32 (E.D. Cal. Oct. 18. 2012) (explaining the single substantively unconscionable provision could be severed because it was "collateral to the Agreement and does not permeate the Agreement with unconscionability"). Moreover, the provisions regarding fees and costs, remedies, the statute of limitations, and discovery limitations are not permeated by unconscionability and do not establish an inferior forum that works to Defendant's advantage. *See Armendariz*, 24 Cal. 4th 83 at 122. Accordingly, the arbitration agreement may be enforced because the terms, taken as a whole, are not substantively unconscionable.

**B.     The arbitration agreement encompasses the disputes at issue.**

To determine whether an arbitration agreement encompasses particular claims, the Court looks to the plain language of the agreement, and "[i]n the absence of any express provision excluding a particular grievance from arbitration . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-86 (1960). Here, the arbitration agreement specifies that it is intended to "cover[]

the full range of employment disputes" including, but not limited to, claims of employment discrimination, a claim of wrongful or unlawful termination, claims for wages or other compensation, and tort claims.  (Doc. 6-2 at 30, 31.)  Based upon these broad specifications, it is clear that the issues at dispute are encompassed within the arbitration agreement.

## V.     Conclusion and Order

Plaintiff and Defendant entered into a valid arbitration agreement, which encompasses the issues in dispute.  As a result, "there is a presumption of arbitrability" and motion to compel arbitration should not be denied.  *See AT&T Tech., Inc.*, 475 U.S. at 650.

Accordingly, IT IS HEREBY ORDERED:

1. The unilateral amendment provision is severed from the arbitration agreement.  The remainder of the 2012 Procedure SHALL be enforced;
2. Defendants' motion to compel arbitration (Doc. 6) is **GRANTED**;
3. The matter is **STAYED** to allow the completion of the arbitration;
4. Every 120 days **and** no later than 30 days after the issuance of the arbitrator's decision, counsel SHALL file a joint status report; and
5. The Court retains jurisdiction to confirm the arbitration award and enter judgment for the purpose of enforcement.

IT IS SO ORDERED.

Dated:    **January 28, 2014**                  /s/ Jennifer L. Thurston
                                          UNITED STATES MAGISTRATE JUDGE